# In the United States Court of Federal Claims

No. 11-353 C

(E-Filed: July 25, 2011)[1]

|  |  |  |
|---|---|---|
|  | ) |  |
| OUTDOOR VENTURE CORP., | ) |  |
|  | ) | Post-Award Bid Protest; Awardee |
| Plaintiff, | ) | Lacks Standing to Bring a Bid |
|  | ) | Protest Action; Effect of Failure |
| v. | ) | Timely to Request Reconsideration |
|  | ) | of SBA Size Determination |
| THE UNITED STATES, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

Marc Lamer, Philadelphia, PA, for plaintiff.

Loren Misha Preheim, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Todd M. Hughes, Deputy Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

---

[1] At the request of the parties, the court entered a protective order in this action. See June 3, 2011 Order (Protective Order), Docket Number (Dkt. No.) 9, passim. Pursuant to the Protective Order, the court filed this Opinion under seal on July 13, 2011. See July 13, 2011 Op. and Order, Dkt. No. 18. The court directed that,

> [i]f the parties believe that this Opinion contains protected material that should be redacted before publication, the parties shall file a joint motion, or separate motions if they do not agree, at or before 5:00 p.m. Eastern Daylight Time on Wednesday, July 20, 2011, requesting that such protected material be redacted. The motion or motions shall indicate the specific protected material as to which redaction is requested and, with respect to each such proposed redaction, the reason(s) for the request.

Id. at 1 n.1. Because neither party filed a motion requesting that material be redacted, the court now publishes this Opinion without redaction.

HEWITT, Chief Judge

This is a post-award bid protest brought by Outdoor Venture Corporation (OVC or plaintiff), the awardee in Solicitation SPM1C1-09-R-0141 (Solicitation), issued by the United States government acting through the Defense Supply Center Philadelphia, now known as the Defense Logistics Agency Troop Support (DLA, the agency, the government or defendant). Complaint for Declaratory and Injunctive Relief (Complaint or Compl.), Docket Number (Dkt. No.) 1, ¶¶ 4, 16.

Before the court are plaintiff's Complaint, filed on June 3, 2011; Defendant's Motion to Dismiss (defendant's Motion or Def.'s Mot.), filed on June 8, 2011, Dkt. No. 12; Plaintiff's Opposition to Defendant's Motion to Dismiss (plaintiff's Response or Pl.'s Resp.), filed on June 13, 2011, Dkt. No. 13; and Defendant's Reply in Support of Motion to Dismiss (defendant's reply or Def.'s Reply), filed on June 15, 2011, Dkt. No. 15.

The court held a telephonic oral argument on Thursday, June 16, 2011 at 2:00 p.m. Eastern Daylight Time.[2]

Defendant moves to dismiss OVC's Complaint under Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC). Def.'s Mot. 1. Defendant contends that OVC's Complaint should be dismissed for five reasons: (1) OVC lacks standing to bring this bid protest because "OVC was the winning bidder on the solicitation at issue, and, therefore, cannot demonstrate prejudice;" (2) OVC has "failed to exhaust its administrative remedies;" (3) "OVC's claim is not justiciable because the applicable regulation provides that the Small Business Administration ('SBA') has 'sole discretion' to determine whether to reopen a claim;" (4) OVC has "failed to state a claim because, under the applicable regulation, SBA was required to deny OVC's request to reopen SBA's size determination as untimely;" and (5) "the [c]ourt does not possess jurisdiction to grant OVC's request that the [c]ourt enjoin the agency from terminating the contract for convenience." Def.'s Mot. 1. For the reasons discussed below, defendant's Motion to Dismiss is GRANTED.

I.      Background

On June 7, 2009 DLA issued Solicitation SPM1C1-09-R-0141. Compl. ¶ 4. The Solicitation requested offers on an Indefinite Delivery, Indefinite Quantity contract for the manufacture and delivery of two-man combat tents. Compl. ¶ 5. The Solicitation was a Total Small Business Set-Aside. Compl. ¶ 6.

---

[2]The oral argument held on Thursday, June 16, 2011 was recorded by the court's Electronic Digital Recording (EDR) system. The times noted in citations to the oral argument refer to the EDR record of the oral argument.

On December 2, 2010 OVC was awarded a contract under the Solicitation. Compl. ¶ 16. Following the award to OVC, Diamond Brand Products (Diamond), one of the unsuccessful offerors on the contract, filed a protest with the Government Accountability Office (GAO), in which it challenged the award to OVC on a number of grounds. Compl. ¶ 17. One of the grounds for protest was that OVC should not be classified as a small business because "the end items OVC would be supplying would, in fact, be produced by a large business" and because "OVC would be subcontracting more than 50% of its work [to a large business]." Compl. ¶ 17. When Diamond filed its protest at GAO, OVC's contract was automatically suspended. June 16, 2011 Oral Argument (Oral Argument), Argument of Mr. Marc Lamer at 2:14:18-48; see also 48 C.F.R. § 33.104(c)(1) (2010) (stating, with exceptions, that, "[w]hen the agency receives notice of a protest from the GAO within 10 days after contract award . . . , the contracting officer shall immediately suspend performance or terminate the awarded contract").

Because Diamond had failed to file a timely size protest with SBA, GAO suggested that DLA refer the small business issues in the protest to SBA. Compl. ¶¶ 17, 18. DLA did so, and Diamond withdrew those portions of its GAO protest relating to OVC's classification as a small business. Compl. ¶ 18. Diamond's protest was dismissed by GAO on March 24, 2011. Compl. ¶ 24. Plaintiff's counsel stated at oral argument that, "[w]hen that protest was denied by GAO, the . . . statutory stop work order . . . was no longer there, but the agency . . . never lifted the stay, so performance is still suspended," Oral Argument, Argument of Mr. Marc Lamer at 2:14:34-48, a statement that was not contradicted, see Oral Argument passim.

On March 2, 2011 OVC received a notification letter from SBA that OVC's "status as a small business concern has been protested in connection with the [Solicitation]." Compl. ¶¶ 19, 20. The SBA letter requested information from OVC, including a "statement in answer to the allegations of the protest letter with any supporting evidence." Compl. ¶ 22. OVC responded to the letter on March 8, 2011. Compl. ¶ 23. On April 2, 2011 OVC received an email from SBA requesting additional information about its subcontractor, Johnson Outdoors Gear, LLC (JOG). Compl. ¶¶ 25, 26; see also Compl. ¶ 12 (stating that "[i]n its proposal, OVC identified [JOG] as a subcontractor, pursuant to a Teaming Agreement"). On April 4, 2011 OVC replied to SBA, "explaining that JOG is a publicly held large business," Compl. ¶ 28, but "reiterat[ing] that [OVC], a small business, would be the manufacturer of the end-item," Compl. ¶ 29. On April 6, 2011 SBA "found OVC to be other than small for the particular procurement" at issue. Compl. ¶ 30.

SBA regulations provide that a party who wishes to appeal an SBA determination to SBA's Office of Hearings and Appeals (OHA) must do so within fifteen days of receipt of the determination. Revised Size Protest Appeal Procedures, 76 Fed. Reg. 5680, 5685 (Feb. 2, 2011) (to be codified at 13 C.F.R. § 134.304(a)). Because OVC received

the determination on April 6, 2011,[3] see Compl. ¶ 34, OVC was required to file its appeal with OHA by April 21, 2011, see 76 Fed. Reg. at 5685.

On April 21, 2011 counsel for OVC attempted to file OVC's appeal with OHA electronically by email, as provided in OHA's regulations. Compl. ¶¶ 35, 36. Because OVC's appeal petition was larger than the maximum file size allowed by SBA, the email was returned. Compl. ¶ 37. Counsel for OVC then divided the appeal petition into three parts and sent them separately. Compl. ¶ 38. On April 25, 2011 OVC's counsel called OHA and was informed that OHA had not received the appeal petition. Compl. ¶ 40. OVC's counsel attempted to re-send the appeal petition by email, but OHA did not receive OVC's emails. Compl. ¶¶ 41, 42. OVC's counsel then sent a paper copy of the appeal petition to OHA by overnight delivery. Compl. ¶ 44.

On April 29, 2011 OVC's counsel received an Order to Show Cause by email from OHA directing OVC to show cause why the appeal petition should not be dismissed as untimely. Compl. ¶ 45. OVC replied to this order on May 6, 2011. Compl. ¶ 46. On May 17, 2011 OHA dismissed the appeal as untimely filed. Compl. ¶ 47.

On May 18, 2011 OVC requested that SBA reopen the OVC size determination based upon administrative error, pursuant to 13 C.F.R. § 121.1009(h), citing SBA's failure to inform OVC that SBA was considering the ostensible subcontractor rule. Compl. ¶ 48 (citation omitted). On June 1, 2011 SBA denied the request to reopen the OVC size determination, finding that under the version of 13 C.F.R. § 121.1009(h) that took effect on March 4, 2011--two days after the size protest was filed against OVC at SBA--requests to reopen the determination must be filed within fifteen days after receipt of the determination. Compl. ¶ 49. Because OVC received the size determination on April 6, 2011, see Compl. ¶ 34, but had failed to request that SBA reopen the

---

[3]Plaintiff does not state expressly the date on which it received the size determination from the Small Business Administration (SBA). See Compl. for Declaratory and Injunctive Relief (Complaint or Compl.), Dkt. No. 1, passim; Pl.'s Opp'n to Def.'s Mot. to Dismiss (plaintiff's Response or Pl.'s Resp.), Dkt. No. 13, passim. However, plaintiff's receipt of the size determination on April 6, 2011 is a necessary inference from other facts stated in its Complaint. See Compl. ¶ 34 ("Pursuant to SBA Regulation, i.e., 13 CFR § 134.304, OVC had fifteen (15) days to appeal [SBA's size determination] to the OHA; April 21, 2011 was the 15[th] day." (emphasis omitted)). Plaintiff also filed with its Complaint a copy of a facsimile it received from SBA, dated April 6, 2011, containing the size determination. See Decl. [of J.C. Egnew] Under Penalty of Perjury, Dkt. No. 6, Ex. H (facsimile from SBA) at 1-11. OVC received the decision the same day it was made. See Compl. ¶ 30 (stating that SBA made the size determination on April 6, 2011). Plaintiff does not argue that receipt of the size determination by facsimile was insufficient to begin the running of the appeal period. See Compl. passim; Pl.'s Resp. passim.

4

determination on or before April 21, 2011, SBA found that OVC's request to reopen was untimely. See Compl. ¶ 49; see also Decl. [of Marc Lamer] Under Penalty of Perjury, Dkt. No. 5, Ex. N (Letter from SBA denying request to reopen) at 2-3.

On June 3, 2011 OVC filed its Complaint in this court. OVC requests that the court "declare that any termination of the contract award to OVC without a reopening of the [s]ize [d]etermination by [SBA] pursuant to 13 C.F.R. § 121.1009(b) would be arbitrary and capricious." Compl. ¶ 55. OVC further requests that the court "enjoin defendant from terminating the award to OVC and direct[ ] that [SBA] reopen the OVC [s]ize [d]etermination." Compl. 11.[4]

Defendant moves to dismiss under RCFC 12(b)(1) and RCFC 12(b)(6). Def.'s Mot. 1.

II. Legal Standards

    A. Motions to Dismiss Under RCFC 12(b)(1)

Subject matter jurisdiction is a threshold matter that a court must determine at the outset of a case. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998); see PODS, Inc. v. Porta Stor, Inc., 484 F.3d 1359, 1365 (Fed. Cir. 2007). "A party seeking the exercise of jurisdiction in its favor bears the burden of establishing that such jurisdiction exists." Mars Inc. v. Kabushiki-Kaisha Nippon Conlux, 24 F.3d 1368, 1372 (Fed. Cir. 1994) (citing KVOS, Inc. v. Associated Press, 299 U.S. 269, 278 (1936)). The court must accept as true all undisputed allegations of fact made by the non-moving party and draw all reasonable inferences from those facts in the non-moving party's favor. Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995) (citing Scheuer v. Rhodes, 416 U.S. 232, 236-37 (1974)). However, "[w]hen a party challenges the jurisdictional facts alleged in the complaint, the court may consider relevant evidence outside the pleadings to resolve the factual dispute." Arakaki v. United States, 62 Fed. Cl. 244, 247 (2004) (citing Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988) and Indium Corp. of Am. v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985)); 2 James Wm. Moore et al., Moore's Federal Practice § 12.30[3] (2011) ("[U]nlike a Rule

---

[4]In plaintiff's Response, at 4, plaintiff restates the relief it is seeking:

> The nature of Plaintiff's claim is two-fold. First, there is the issue of how DLA[ ] (the contracting agency) applies the size determination. In other words, which version of 13 C.F.R. § 121.1009(g) is applicable to the instant situation, i.e., the version that took effect on March 4, 2011 and required cancellation (see[ ] (g)(2)), or the version that was in effect on March 2 which did not. Secondly, Plaintiff is challenging the refusal of [SBA] to exercise its discretion and reopen the size determination under the version of § 121.1009(h) in effect on the date the size protest was filed.

12(b)(6) dismissal, the court need not confine its evaluation to the face of the pleadings . . . ."). If a court determines that it does not have jurisdiction, it must dismiss the claim. RCFC 12(h)(3).

### B. Standing

"Standing is a threshold jurisdictional issue that implicates Article III of the Constitution." Hoopa Valley Tribe v. United States (Hoopa), 597 F.3d 1278, 1283 (Fed. Cir. 2010) (quoting S. Cal. Fed. Sav. & Loan Ass'n v. United States, 422 F.3d 1319, 1328 (Fed. Cir. 2005)). The party invoking the court's jurisdiction bears the burden of establishing that it has standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (citations omitted). "'[T]he irreducible constitutional minimum of standing contains three elements:' injury in fact, causation, and redressability." Hoopa, 597 F.3d at 1283 (quoting Lujan, 504 U.S. at 560-61).

In bid protests, the question of standing is framed by 28 U.S.C. § 1491(b)(1) (2006), which "imposes more stringent standing requirements than Article III." Weeks Marine, Inc. v. United States (Weeks Marine), 575 F.3d 1352, 1369 (Fed. Cir. 2009) (citing American Federation of Government Employees v. United States (AFGE), 258 F.3d 1294, 1302 (Fed. Cir. 2001)). Specifically, § 1491(b)(1) "confers standing on 'an interested party objecting to a solicitation by a Federal agency.'" AFGE, 258 F.3d at 1299 (quoting 28 U.S.C. § 1491(b)(1)). The term "interested party" encompasses "actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." Id. at 1302.

### C. Motions to Dismiss Under RCFC 12(b)(6)

RCFC 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." RCFC 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly (Twombly), 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In determining whether it should grant a 12(b)(6) motion, the court "must accept as true all the factual allegations in the complaint" and make "all reasonable inferences in favor of the non-movant." Sommers Oil Co. v. United States, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (internal citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

The purpose of Rule 12(b)(6) "is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity." Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc., 988 F.2d 1157, 1160 (Fed. Cir. 1993) (citing Neitzke v. Williams, 490 U.S. 319, 326-27 (1989)). A failure to state a claim upon which relief can be granted warrants a judgment on the merits rather than a dismissal for lack of jurisdiction. Gould, Inc. v. United States, 67 F.3d 925, 929 (Fed. Cir. 1995).

D.  Violations of Statute or Regulation in Connection with a Procurement

The Tucker Act, as amended by the Administrative Dispute Resolution Act (ADRA), 28 U.S.C. § 1491(b)(1) (2006), confers jurisdiction on this court

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1). The court reviews a bid protest action under the standards set out in the Administrative Procedure Act (APA), 5 U.S.C. § 706 (2006). 28 U.S.C. § 1491(b)(4); NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004).

Under the APA standard of review, as applied in Scanwell Labs., Inc. v. Shaffer, 424 F.2d 859 (D.C. Cir. 1970), and now under the ADRA, "a bid award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." Banknote Corp. of Am. v. United States, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting Impresa Construzioni Geom. Domenico Garufi v. United States (Impresa), 238 F.3d 1324, 1332 (Fed. Cir. 2001)). Challenges to decisions on the basis of a violation of a regulation or procedure "must show a clear and prejudicial violation of applicable statutes or regulations." Impresa, 238 F.3d at 1333 (internal quotation marks and citation omitted).

III.  Discussion

   A.  OVC Lacks Standing to Bring this Bid Protest

Defendant offers two reasons why OVC lacks standing to bring this bid protest. First, defendant argues that, as the awardee in this procurement, OVC lacks standing to bring a bid protest. Def.'s Mot. 4-5. Second, defendant argues that OVC has not alleged "the kind of 'actual or imminent' harm that is necessary for Article III standing." Def.'s Mot. 5 (quoting Weeks Marine, 575 F.3d at 1372-73). The implication of both of defendant's standing arguments is that an awardee, such as OVC, that faces the potential termination of its contract must wait for the government to take concrete action before it

may sue. If the government terminates OVC's contract, OVC may bring a claim under the CDA. Def.'s Mot. 5. If the government then awards the contract to a different bidder, OVC may protest the new award. Def.'s Mot. 5. Because the government has not done either, defendant argues, plaintiff lacks standing. Def.'s Mot. 5. For the reasons stated below, the court agrees that OVC lacks standing to bring this protest.

  1.  As the Awardee, OVC Is Not an Interested Party

The United States Court of Appeals for the Federal Circuit (Federal Circuit) has held that the term "interested party" encompasses "actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." AFGE, 258 F.3d at 1302. Once a bidder has received a contract, it is no longer an actual or prospective bidder or offeror with regard to the particular procurement. Instead, the bidder has become an awardee, who is not an interested party for purposes of 28 U.S.C. § 1491(b)(1) and therefore lacks standing to bring a bid protest to protect its award. See, e.g., Ingersoll-Rand Co. v. United States, 780 F.2d 74, 79 (D.C. Cir. 1985) ("[Plaintiff] is not a disappointed bidder who seeks to void the award of a contract to another; instead, it complains of wrongful termination of its own contract with the government." (citation omitted)); Taylor Consultants v. United States, 90 Fed. Cl. 531, 545 (2009) (dismissing bid protest claims concerning bad faith termination of the plaintiff's contract); ABF Freight Sys., Inc. v. United States, 55 Fed. Cl. 392, 397 (2003) ("The court does not see how a plaintiff asserting claims pertaining to a contract it has made with the government could be a 'disappointed bidder' for bid protest purposes." (citation omitted)); Davis/HRGM Joint Venture v. United States, 50 Fed. Cl. 539, 545 (2001) ("Here, Plaintiff clearly challenges the termination of its contract. Plaintiff's characterization of the contracting officer's decision to terminate the contract as violating regulations or irrational and arbitrary does not bring the claim within this Court's bid protest jurisdiction.").

Contract awardees such as OVC must instead bring contract claims pursuant to the Contract Disputes Act of 1978 (CDA), Act of Jan. 4, 2011, Pub. L. No. 111-350, §§ 7101-09, 124 Stat. 3677, 3816-26.[5] See CDA § 7103(g) (stating that a contracting officer's decision on a claim is "not subject to review by any forum, tribunal, or Federal Government agency" except as provided by the CDA); Dalton v. Sherwood Van Lines, Inc., 50 F.3d 1014, 1017 (Fed. Cir. 1995) ("When the Contract Disputes Act applies, it provides the exclusive mechanism for dispute resolution; the Contract Disputes Act was not designed to serve as an alternative administrative remedy, available at the

---

[5]Congress recently reorganized the title of the United States Code that contains the Contract Disputes Act (CDA). See Act of Jan. 4, 2011, Pub. L. No. 111-350, 124 Stat. 3677. Although the reorganization makes no substantive changes to the CDA for the purposes of this case, it does relocate the provisions of the CDA from 41 U.S.C. §§ 601-13 (2006) to 41 U.S.C. §§ 7101-09. See id. §§ 7101-09.

contractor's option." (citations omitted)); Cecile Indus., Inc. v. Cheney, 995 F.2d 1052, 1055 (Fed. Cir. 1993) ("The CDA exclusively governs Government contracts and Government contract disputes.") (citing Cascade Pac. Int'l v. United States, 773 F.2d 287, 296 (Fed. Cir. 1985); Gov't Tech. Servs. LLC v. United States, 90 Fed. Cl. 522, 527 (2009) ("The Federal Circuit has made it crystal clear that the CDA is the 'exclusive mechanism' for the resolution of disputes arising, as here, in contract management.") (citing Dalton, 50 F.3d at 1017).

"[P]ure contract claims are not appropriate in a bid protest, even if clothed in the guise of a protest of an alleged statutory violation occurring in relation to a procurement." Frazier v. United States, 79 Fed. Cl. 148, 160 (2007) (citation omitted); see also Data Monitor Sys., Inc. v. United States, 74 Fed. Cl. 66, 72 (2006) (rejecting the proposition that "a claim redressable under the CDA may be refocused as a claim for injunctive relief under the court's bid protest jurisdiction").

Plaintiff contends that "several decisions of this Court have held that a contract awardee . . . can invoke the Court's bid protest jurisdiction by contending that cancellation of its contract would be arbitrary and capricious." Pl.'s Resp. 1. The cases cited by plaintiff, however, are inapplicable to plaintiff's post-award bid protest.

"This Court has held that where a plaintiff, as the contract awardee, files a protest challenging an agency's decision to resolicit a proposal, the plaintiff's protest is in the nature of a pre-award claim." Ceres Gulf, Inc. v. United States, 94 Fed. Cl. 303, 315 (2010) (internal quotations omitted). In each of the cases cited by plaintiff, this court found that contract awardees had standing to bring pre-award bid protests because the government resolicited or began to resolicit the contract. See Jacobs Tech., Inc. v. United States, No. 11-180 C, 2011 WL 2044581, at *6 (Fed. Cl. May 26, 2011) ("In this case, the 'stay' of the award to Jacobs and the resolicitation under different terms is a de facto rescission of the award to Jacobs . . . ."); Centech Grp., Inc. v. United States, 78 Fed. Cl. 496, 504 (2007) ("Because Centech was stripped of its status as the successful awardee de facto and relegated to competing anew, it does not remain the successful awardee.");[6] Turner Constr. Co. v. United States, 94 Fed. Cl. 561, 585 (2010) ("Turner has been stripped of a $300 million contract and been barred from competing in the re-

---

[6] The court's decision in Centech Grp., Inc. v. United States, 78 Fed. Cl. 496, 498 (2007) addressed two motions to dismiss. In a later decision, the court largely denied the plaintiff's claims. See Centech Grp., Inc. v. United States, 79 Fed. Cl. 562, 577-78 (2007). On appeal, the United States Court of Appeals for the Federal Circuit (Federal Circuit) did not address the issue of standing. See Centech Grp., Inc. v. United States (Centech), 554 F.3d 1029 passim (Fed. Cir. 2009). The Federal Circuit "must always determine for itself whether it has jurisdiction to hear the case before it, even when the parties do not raise or contest the issue." Avid Identification Sys., Inc. v. Crystal Import Corp., 603 F.3d 967, 971 (Fed. Cir. 2010) (citations omitted). The Federal Circuit did not question plaintiff's standing in its Centech opinion. See Centech, 554 F.3d passim.

procurement of that contract."); Sheridan Corp. v. United States, 95 Fed. Cl. 141, 149 (2010) ("Indeed, it is difficult to imagine a party that is more economically interested than Sheridan who, having been selected and awarded the contract, would have to wait to receive the Government's new decision following the resolicitation of proposals.").

In this case, OVC's award has been stayed, see Oral Argument, Argument of Mr. Marc Lamer at 2:14:34-48 (stating that DLA has not lifted the automatic stay that began when Diamond filed its protest at GAO), but OVC does not allege that the government has resolicited the contract or that it intends to do so, see Compl. passim; see also Pl.'s Resp. 3 n.1 ("Plaintiff would point out that it will not be able to compete for the award as there will be no re-solicitation in this case."). Because there has been no resolicitation-- as there was in the cases cited by plaintiff--OVC's protest is not in the nature of a pre-award claim. Therefore, OVC has failed to establish that it is an interested party with standing to bring this bid protest. See AFGE, 258 F.3d at 1299 (stating that standing to bring bid protests is limited to interested parties) (citation omitted); see also Lujan, 504 U.S. at 561 (stating that the party invoking the court's jurisdiction bears the burden of establishing that it has standing) (citations omitted).

    2.    OVC Alleges a Conjectural or Hypothetical Harm

Defendant argues that OVC lacks standing because OVC "merely speculates what the agency will do in response to SBA's determination," rather than establishing "the kind of 'actual or imminent' harm that is necessary for Article III standing." Def.'s Mot. 5 (quoting Weeks Marine, 575 F.3d at 1372-73).[7]

To establish that it has standing, OVC must demonstrate "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (footnote, citations and quotation marks omitted). OVC does not allege that the government has terminated its award or resolicited the contract. See Compl. passim; Pl.'s Resp. 3 n.1 ("Plaintiff would point out that it will not be able to compete for the award as there will be no re-solicitation in this case."). Rather, OVC alleges that "[b]ecause [SBA's] [s]ize [d]etermination was as a result of a GAO Protest . . . DLA[ ] may now be required to terminate the award to OVC." Compl. ¶ 54 (citation omitted) (emphasis added). A harm that OVC itself describes as something that "may" occur is neither concrete and particularized nor actual or imminent. See Lujan, 504 U.S. at 560 (citations omitted). Therefore, the court agrees

---

[7]In the alternative, defendant states, without analysis, "the case is not ripe for review." Def.'s Mot. to Dismiss (Def.'s Mot.), Dkt. No. 12, at 6 (citing Ryan v. United States, 71 Fed. Cl. 740, 743 (2006)); see also Def.'s Reply in Support of Mot. to Dismiss, Dkt. No. 15, at 4 ("In any event, the agency has not terminated the contract.") (citing Madison Servs., Inc. v. United States, 90 Fed. Cl. 673, 679 (2009)). Because the court agrees with defendant's argument that plaintiff lacks standing to bring this bid protest, the court does not reach the ripeness issue.

with defendant that OVC has alleged a harm that is conjectural or hypothetical and that does not confer upon OVC standing to bring this bid protest.

B.  The Court Lacks Jurisdiction to Review SBA's Decision Not to Reopen

Defendant argues that "[t]he [c]ourt also lacks jurisdiction to entertain OVC's claim because SBA's decision whether to reopen a size determination is committed to agency discretion." Def.'s Mot. 7. The court agrees and finds that, because the decision whether to reopen a size determination is in SBA's sole discretion, and because there are no guidelines for SBA to follow, the court lacks jurisdiction to review SBA's decision.

Defendant states that "[t]he United States Supreme Court [(Supreme Court)] has explained that an action is committed to agency discretion if the underlying regulations upon which that action is based are 'drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" Def.'s Mot. 7 (quoting Heckler v. Chaney, 470 U.S. 821, 830 (1985)). Defendant argues that the regulation governing the reopening of size determinations allows SBA to determine "in its sole discretion" whether to reopen a size determination and offers no factors for SBA to consider. Def.'s Mot. 7-8 (citations omitted). Plaintiff responds that "it is well-settled that even where a matter is committed to agency discretion, this [c]ourt may act where the discretion is abused." Pl.'s Resp. 6 (citations omitted).

When deciding a bid protest, the court reviews an agency decision under the standards set out in the APA. 28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5."); NVT Techs., 370 F.3d at 1159. The APA precludes judicial review to the extent that "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Therefore, if the decision whether to reopen a size determination is "committed to agency discretion by law," id., the decision is "presumptively unreviewable" under the APA, Heckler, 470 U.S. at 832; see also Salmon Spawning & Recovery Alliance v. U.S. Customs and Border Prot., 550 F.3d 1121, 1128-29 (Fed. Cir. 2008) (stating that 5 U.S.C. § 701(a)(2) precludes judicial review under the APA when agency action is committed to agency discretion by law) (citations omitted). The presumption of unreviewability may be rebutted only by a showing that "the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers."[8] Heckler, 470 U.S. at 832-33.

Applying Heckler, the Supreme Court has held that "where a party petitions an agency for reconsideration on the ground of 'material error,' i.e., on the same record that

---

[8]The United States Supreme Court "express[ed] no opinion" on whether a decision by an agency not to institute proceedings based on the agency's belief that it lacked jurisdiction is reviewable under 5 U.S.C. § 701(a)(2). Heckler v. Chaney, 470 U.S. 821, 833 n.4 (1985).

11

was before the agency when it rendered its original decision, 'an order which merely denies rehearing of . . . [the prior] order is not itself reviewable.'" Interstate Commerce Comm'n v. Brotherhood of Locomotive Engineers (Locomotive Engineers), 482 U.S. 270, 280 (1987) (alteration in original) (quoting Microwave Commc'ns, Inc. v. Fed. Commc'ns Cmm'n, 515 F.2d 385, 387 n.7 (D.C. Cir. 1974)); see also Your Home Visiting Nurse Servs., Inc. v. Shalala, 525 U.S. 449, 457 (1999) (characterizing the holding of Locomotive Engineers as: "the decision whether to reopen, at least where no new evidence is at issue, is 'committed to agency discretion by law' within the meaning of the Administrative Procedure Act, and hence unreviewable") (quoting Locomotive Engineers, 482 U.S. at 282) (internal quotation marks omitted).

The regulation at issue here provides no indication that the holding of Locomotive Engineers does not apply:

> (h) Limited reopening of size determinations. SBA may, in its sole discretion, reopen a formal size determination to correct an error or mistake, provided it is within the appeal period and no appeal has been filed with OHA. Once the agency has issued a final decision (either a formal size determination that is not timely appealed or an appellate decision), SBA cannot re-open the size determination.

76 Fed. Reg. at 5683 (to be codified at 13 C.F.R. § 121.1009(h)) (second emphasis added). The regulation grants SBA sole discretion to decide whether to reopen a size determination and provides no guidelines for SBA to follow. See id.

An otherwise unreviewable agency decision does not become reviewable merely because the agency states a "reviewable" reason for its decision. In Locomotive Engineers, the Supreme Court, drawing an analogy to prosecutorial discretion, noted that a prosecutor may exercise his or her discretion not to prosecute a particular violation based on a belief that the law will not support a conviction. Locomotive Engineers, 482 U.S. at 283. "That is surely an eminently 'reviewable' proposition, in the sense that courts are well qualified to consider the point; yet it is entirely clear that the refusal to prosecute cannot be the subject of judicial review." Id. Here, SBA stated that it would not reopen the size determination because it was barred from doing so under either version of 13 C.F.R. § 121.1009(h). Compl. ¶¶ 49-50. Although SBA stated this "reviewable reason" for its decision, see Locomotive Engineers, 482 U.S. at 283, the decision not to reopen is committed to agency discretion and is not subject to judicial review, see id. at 280.[9] The court lacks jurisdiction to review SBA's decision not to

---

[9]The regulation governing the reopening of size appeals prohibits SBA from granting untimely requests to reopen. See Revised Size Protest Appeal Procedures, 76 Fed. Reg. 5680, 5683 (Feb. 2, 2011) (to be codified at 13 C.F.R. § 121.1009(h)) (stating that SBA may "in its sole discretion" reopen a size determination "provided it is within the appeal period and no appeal has been filed with OHA"). This case does not present the question of whether the court

reopen the size determination.[10]  See Locomotive Engineers, 482 U.S. at 282; Heckler, 470 U.S. at 832.[11]

        C.      OVC Has Failed to State a Claim Upon Which Relief May be Granted

The court has determined that it lacks jurisdiction to hear plaintiff's claims.  See supra Parts III.A-B; see also Steel Co., 523 U.S. at 94 ("Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.") (quoting Ex Parte McCardle, 74 U.S. (7 Wall) 506, 514 (1868)).  For purposes of judicial economy and efficiency, however, given the possibility that the court's view of its jurisdiction might not prove persuasive to a reviewing court, the court addresses defendant's argument that plaintiff has failed to state a claim upon relief can be granted with regard to SBA's decision not to reopen.

Plaintiff requests "that the [c]ourt declare that any termination of the contract award to OVC without a reopening of the [s]ize [d]etermination by SBA" would be a violation of statute or regulation in connection with a procurement.[12]  Compl. 10.

---

has jurisdiction to review a decision by SBA to grant an untimely request to reopen a size determination despite the proviso barring SBA from doing so.

[10]Defendant argues that plaintiff failed to exhaust its administrative remedies before seeking judicial review of SBA's decision not to reopen the size determination.  See Def.'s Mot. 1, 6-7.  Because the court has determined that it lacks jurisdiction to review SBA's decision not to reopen, this argument is moot.

[11]Defendant argues that, in the alternative, the lack of "factors or restrictions against which the [c]ourt can measure SBA's decision not to reopen the formal size determination" makes the decision nonjusticiable.  Def.'s Mot. 9.  Justiciability is a ground of dismissal distinct from jurisdiction and concerns "whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded."  Baker v. Carr, 369 U.S. 186, 198 (1962).  Because the court finds that it lacks jurisdiction to review the refusal to reopen, it does not reach the question of whether the decision was also nonjusticiable.

[12]Although plaintiff requests that the court declare that a decision by the contracting officer to terminate the contract without SBA having first reopened the size determination would be arbitrary and capricious, Compl. for Declaratory and Injunctive Relief (Compl.), Dkt. No. 1, at 10, the court understands plaintiff's argument to be that the decision not to reopen the size determination was a "violation of statute or regulation in connection with a procurement," 28 U.S.C. § 1491(b)(1).  The focus of plaintiff's argument is that SBA applied the incorrect version of the regulation governing reopening of size determinations and that SBA misinterpreted both versions of the regulation.  Pl.'s Resp. 4-6.  Plaintiff does not argue that the contracting officer's reliance on an SBA size determination would be arbitrary or capricious.  See id.

13

Defendant contends that OVC has "failed to state a claim because, under the applicable regulation, SBA was required to deny OVC's request to reopen SBA's size determination as untimely."  Def.'s Mot. 1.  The court agrees with defendant that SBA was required to deny OVC's request to reopen the size determination.

SBA is authorized to reopen size determinations by 13 C.F.R. § 121.1009(h).  While the size protest against OVC was underway at SBA, a final rule went into effect that changed the time period within which a request to reopen may be filed.  See 76 Fed. Reg. at 5680.  On March 2, 2011, when OVC was notified that a size protest had been filed, Compl. ¶ 19, the version of 13 C.F.R. § 121.1009(h) in effect stated as follows:

> (h) Limited reopening of size determinations.  In cases where the size determination contains clear administrative error or a clear mistake of fact, SBA may, in its sole discretion, reopen the size determination to correct the error or mistake, provided no appeal has been filed with OHA.

13 C.F.R. § 121.1009(h) (2011).  However, a final rule containing the following amended version of 13 C.F.R. § 121.1009(h) took effect on March 4, 2011:

> (h) Limited reopening of size determinations.  SBA may, in its sole discretion, reopen a formal size determination to correct an error or mistake, provided it is within the appeal period and no appeal has been filed with OHA.  Once the agency has issued a final decision (either a formal size determination that is not timely appealed or an appellate decision), SBA cannot re-open the size determination.

76 Fed. Reg. at 5683.

Defendant argues that, because OVC requested that SBA reopen its size determination on May 18, 2011--well after the appeal period had ended on April 21, 2011--SBA was required under the new version of 13 C.F.R. § 121.1009(h) to deny the request as untimely.  Def.'s Mot. 9-10.  Therefore, defendant contends, SBA did not violate its regulations.  Def.'s Mot. 10.

Plaintiff responds that "regulatory changes that affect substantive rights are only effective for solicitations issued after they become effective and regulatory changes that are procedural in nature are only effective for proceedings commenced after their effective date."  Pl.'s Resp. 5 (emphasis omitted).  Plaintiff cites GASL, Inc., SBA No. SIZ-4191 (June 20, 1996), for the proposition that regulatory changes affecting procedure affect only proceedings filed after their effective date.  In GASL, OHA stated:

> SBA recently has revised its size and SIC regulations, and the procedural regulations for this Office.  See 13 C.F.R. Parts 121 and 134 (1996).  The revised procedural regulations are effective for all cases filed with this

Office after March 1, 1996. 61 Fed. Reg. 2682 (January 29, 1996). The appeal therefore is timely under the new regulations. 13 C.F.R. Section 134.304(a)(1) (1996).

GASL, SBA No. SIZ-4191. Plaintiff argues that, pursuant to GASL, the earlier version of the regulation was in effect when plaintiff filed its request to reopen the size determination. Pl.'s Resp. 5-6. Because the earlier version of the regulation did not require requests to reopen to be filed within the appeal period, plaintiff argues, SBA abused its discretion in refusing to reopen the size determination. See Pl.'s Resp. 5-6.

However, regardless of which version of 13 C.F.R. § 121.1009(h) applied, plaintiff's request to reopen the size determination would have been untimely. The letter OVC received from SBA denying OVC's request to reopen the size determination "asserted that the request for reopening would have been denied under the prior version of 13 [C.F.R.] § 121.1009(h), which did not set any time limit for reopening, because that version stated that a size determination could be reopened provided no appeal had been filed with the OHA[,] and OVC had filed an appeal with the OHA (i.e., the untimely appeal that OHA had dismissed)." Compl. ¶ 50.

Moreover, the court finds that the new version of 13 C.F.R. § 121.1009(h) was properly applied to plaintiff's request to reopen the size determination. The Federal Register notice at issue in GASL clearly stated that "[t]his rule is effective February 28, 1996. This rule applies with respect to all cases filed with OHA on or after February 28, 1996."[13] Rules of Procedure Governing Cases Before the Office of Hearings and Appeals, 61 Fed. Reg. 2682 (Jan. 29, 1996). In contrast, the Federal Register notice at issue in this case simply states: "Effective date: March 4, 2011." 76 Fed. Reg. at 5680. The Federal Register notice provides that certain amendments to the regulations apply only to solicitations issued on or after March 4, 2011, but the amendments to 13 C.F.R. § 121.1009 are not among those amendments. See id. ("Applicability date: The amendments to 13 CFR 121.402(b), 121.404(a), and 121.407 apply to solicitations issued on or after March 4, 2011."). Therefore, the Federal Register provides that the amendment to 13 C.F.R. § 121.1009(h) became effective on March 4, 2011. The Federal Register provision relied upon by OVC in GASL shows that SBA "knows how to draft a Federal Register notice such that the new regulations only apply to cases filed with OHA after a certain time." Def.'s Reply 9. SBA opted not to do so here.

---

[13]The Office of Hearings and Appeals did not explain the discrepancy between the effective date cited in its opinion and in the Federal Register notice. Compare GASL, Inc., SBA No. SIZ-4191 (June 20, 1996) (stating, without explanation, that the revised regulations were effective for all cases filed after March 1, 1996), with Rules of Procedure Governing Cases Before the Office of Hearings and Appeals, 61 Fed. Reg. 2682 (Jan. 29, 1996) ("This rule applies with respect to all cases filed with OHA on or after February 28, 1996.").

15

Plaintiff contended at oral argument that, because there is a presumption against applying a newly-enacted law or regulation retroactively, SBA was incorrect to apply the amended regulations to plaintiff's request to reopen. See Oral Argument, Argument of Mr. Larc Lamer at 2:29:50-2:30:02 (quoting CCA Assocs. v. United States, 91 Fed. Cl. 580, 596 (2010)). In CCA Associates, the United States Court of Federal Claims (Court of Federal Claims) stated that "[r]etroactive application of a law or regulation is generally disfavored and usually requires an express Congressional statement that a law or regulation is intended to apply retroactively." CCA Assocs., 91 Fed. Cl. at 596 (citations omitted).

Plaintiff's reliance upon CCA Associates, however, is misplaced because SBA's application of the new regulations was not retroactive. "The inquiry into whether a statute operates retroactively demands a commonsense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment." Immigration & Naturalization Serv. v. St. Cyr, 533 U.S. 289, 321 (2001) (internal quotations omitted).

OVC received the size determination on April 6, 2011. See Compl. ¶ 34; supra note 3. Therefore, the first date that OVC could have requested that SBA reopen its size determination was April 6, 2011. The amended regulations became effective more than one month earlier, on March 4, 2011. See 76 Fed. Reg. at 5680. Because the regulations were already in effect--and had been for a month--on the date plaintiff could first file its request for reconsideration, their effect on plaintiff's case was prospective; the regulations did not attach "new legal consequences to events completed before" their effective date. See St. Cyr, 533 U.S. at 321. The effect of the new procedures was not retroactive merely because the size protest was pending when the new procedures went into effect.

The court also notes that when there is a change in the procedural rules of the Court of Federal Claims or the United States district courts, the new rule is applied to pending cases unless doing so is infeasible or unjust. Rule 86 of the Federal Rules of Civil Procedure states:

> (a) These rules and any amendments take effect at the time specified by the Supreme Court . . . . They govern:
>
> (1) proceedings in an action commenced after their effective date; and
>
> (2) proceedings after that date in an action then pending unless:
>
> (A) the Supreme Court specifies otherwise; or

>   (B) the court determines that applying them in a particular
>   action would be infeasible or work an injustice.

Fed. R. Civ. Proc. 86(a). Similarly, RCFC 86 was rewritten in 2006 "to clarify the rule's essential purpose: that amendments to the court's rules apply to all pending proceedings unless the application of such amendments would not be feasible or would work injustice." RCFC 86 Rules Committee Note (2006). It does not appear to the court to be infeasible or unjust for SBA to apply the procedures that became effective on March 4, 2011 to a request to reopen an April 6, 2011 size determination. SBA's decision to do so was consistent with the manner in which a federal district court or the Court of Federal Claims would apply a change in its own procedural rules.

Because OVC filed its request to reopen the size determination after filing an appeal and after the close of the appeal period, SBA did not violate the applicable regulation when it denied OVC's request. Based on the allegations in the Complaint, plaintiff has failed to state a claim regarding SBA's actions upon which relief can be granted. See RCFC 12(b)(6).

### D. The Court Does Not Reach the Issue of the Relief Available to OVC

Because the court has determined that it lacks jurisdiction to hear plaintiff's claims, the court does not reach the issue of what relief might otherwise be available to plaintiff. Compare Compl. 11 ("Plaintiff Outdoor Venture Corp. respectfully requests that the [c]ourt enjoin defendant from terminating the award to OVC . . . ."), with Def.'s Mot. 10 (arguing that "the [c]ourt cannot enjoin DLA from terminating the contract at issue for convenience"), and Oral Argument, Argument of Mr. Marc Lamer at 2:14:52-2:15:01 ("I would agree . . . . The court could not enjoin a termination. The court could enjoin an award to anybody else.").

## IV. Conclusion

Because the court determines that plaintiff lacks standing to bring this bid protest, and because SBA's decision not to reopen its size determination is not reviewable by this court, the court is without jurisdiction to hear plaintiff's claims. Further, plaintiff's allegation that SBA violated a statute or regulation in connection with a procurement by refusing to reopen the size determination fails to state a claim upon which relief can be granted. For the foregoing reasons, defendant's Motion to Dismiss is GRANTED. The Clerk of Court shall ENTER JUDGMENT dismissing plaintiff's Complaint.

Motion of Diamond Brand Products to Intervene, filed on June 14, 2011, Dkt. No. 14, is DENIED as MOOT.

>   IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Chief Judge